IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| ANGELA BLANKS | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. G-11-519 |
| | § | |
| THE COMMUNITY HOSPITAL OF | § | |
| BRAZOSPORT d/b/a BRAZOS | § | |
| REGIONAL HEALTH SYSTEM | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court, with the consent of the parties, is Defendant Brazosport Regional Health System's Motion for Summary Judgment ("Defendant's Motion"). (Docket Entry ("Dkt.") No. 19). Plaintiff Angela Blanks filed a response to the Motion (Dkt. No. 20), to which Defendant then filed a reply. (Dkt. No. 21). After carefully considering the Motion, the response and reply, and the applicable law, this Court now issues this Opinion and Order granting Defendant's Motion for Summary Judgment and dismissing this action for the reasons discussed herein.

## I. BACKGROUND

This is a Title VII action that Plaintiff Angela Blanks (Blanks) brought against her employer, Brazosport Regional Health System (Brazosport), after she was terminated. (Dkt. No. 1).

1

The relevant facts in this case are fairly straightforward. Blanks is an African American woman. In 2005, Brazosport hired her to work as a nurse in the hospital. (Dkt. No. 19, Ex. A at 28). On April 1, 2011, Blanks, who was not in a supervisory role, apparently believed that another nurse, Kristi Crouch (Crouch),[1] was not carrying out her job properly.[2] (*Id.* at 88-95). Blanks did not, however, bring her concerns about Crouch to the charge nurse. (*Id.* at 92, 98, 104-105; *see also*, Ex. C (Calia depo.) at 89, Exs. 3). Instead, she elected to send Crouch a text message that read:

> Go check your patient before you eat. Don't make me sorry I told you this because if you do, I'm DONE! It was a concern that you just got epidural and left to get food and didn't stop to check your patient before coming to eat.

[Emphasis in original]. (Dkt. No. 19 at 90-92, Ex. 4). After sending the text message, Blanks approached Crouch, who was also in the nurse's lounge, and asked Crouch if she had received her text. (*Id.* at 90). Crouch read the text and there is no dispute that it upset her. Crouch attempted to inquire of Blanks "who" had voiced the "concern" about her work, however, Blanks put her

---

[1] Crouch is Caucasian. (Dkt. No. 21, Attach. No. 1).

[2] The evidence reflects that Blanks had previously complained about Crouch, which resulted in Crouch being disciplined. For example, in 2008, after Crouch expressed frustration regarding the different procedures implemented in the woman's unit, Blanks reported Crouch's negative comments to charge nurse, Edna Milne, and then to their supervisor, Tina Landers. (Dkt. No. 19, Ex. A at 41-42; Ex. B (Landers depo.) at 20-21, 23; Ex. C at 44). Landers disciplined Crouch for her negative comments and Blanks acknowledged Crouch's comments stopped. (*Id.*). The next instance occurred in October/November 2010. (*Id.*, Ex. A at 46, 52, 56). According to Blanks, one of the doctors called Crouch "inept" and Crouch, upset by the insult, vented to Blanks that she hated that doctor, that she wished he would die, and that if something happened to him that she would not shed a tear. (*Id.* at 46). Blanks conceded that Crouch did not actually threaten to hurt or even touch the doctor and she was aware that other nurses had also expressed dislike for this particular doctor. (*Id.* at 47). Nevertheless, Blanks reported Crouch's comments to Landers and the charge nurses. After Landers discussed the issue with the Director of Nursing, Crouch was placed on a 90-day work improvement plan which she was willing to follow and make improvements. (*Id.*, Ex. B at 26-28, 36, 81-82).

2

off telling her that they would talk about it later. (*Id.* at 95).

Following that exchange, but still within a close time frame, Blanks approached Crouch on at least two or three different occasions and, despite Crouch's repeated inquiries of her, Blanks declined to tell Crouch who the person was that voiced concerns about her work. (*Id.* at 95-102). When Blanks approached Crouch for the third time she was, once again, aware that Crouch was still upset over the idea that someone was complaining about her work, but persisted in "grilling" Crouch about her patient. (*Id.* at 100-101; Ex. C at 89, Exs. 1, 2, 3). Blanks, still declining to respond to Crouch's questions, suggested to Crouch to settle down and just let it go. (Ex. A at 100-104). When Blanks was reportedly just inches from her face, Crouch uttered an expletive and told Blanks to get out of her face. (*Id.* at 102; Ex. C at 89, Exs. 1, 2). Blanks persisted and, as conceded, she reached out and made physical contact with Crouch. (*Id.*, Ex. A at 102-103; Ex. C at 75, 79-80, 89-90, Exs. 1, 2). According to Crouch and another witness, Blanks also stepped into Crouch's path to prevent her from moving past her. (*Id.*, Ex. C at 75, 79-80, 89-90, Exs. 1, 2). At this point, another nurse who had been present for each of the three encounters, explained in her statement that she attempted to step in between Crouch and Blanks because she felt physical harm might ensue. (*Id.*, Ex. C at 104, 121, Exs. 1, 2). In addition, another nurse, Patricia Vela, broke up the incident by threatening to call a "code purple," which signified the potential for violence. (*Id.*, Ex. A at 104; Ex. C at 76). At that point, Blank turned and went about her work. (*Id.*, Ex. A at 104).

Immediately following the incident, Crouch contacted her supervisor, Tina Landers (Landers), and reported the incident. (Dkt. No. 19, Ex. B at 42). Landers, who was out of the office at the time, contacted the charge nurse, Edna Milne (Milne), and asked her to handle the

3

situation since she was on duty. (*Id.* at 43). Milne[3], who did not witness the incident, suggested to Landers that Crouch should be sent home, but Landers instructed Milne that if she decided to send Crouch home then she would also need to send Blanks home because both were involved in the incident. (*Id.* at 45). Landers then reported the incident to the Candace Fonke, the Director of Nursing. (*Id.*).

The incident was subsequently investigated by Fonke and Christopher Calia, the Director of Human Resources (HR). (Dkt. No. 19, Ex. C at 32). At the conclusion of the investigation, which included written accounts of the incident and face-to-face interviews with the participants and witness (*id.*, Exs. C & D), the decision was made on Friday, April 8, 2011, to terminate Blanks because of her conduct.[4] Although having made the decision to terminate her employment, HR was unable to communicate this to Blanks because she was out of the office on leave and could not be reached. When Blanks returned to work on April 14, 2011, she was informed that she had been terminated.[5] (*Id.*).

After being terminated, Blanks pursued her administrative remedies[6] and, once exhausted, she brought this action in federal court. In her Complaint, Blanks alleges that Brazosport

---

[3] Blanks testified that Milne was Blanks' preceptor and the two developed a close personal relationship that has continued after Blanks was terminated. (Dkt. No. 19, Ex. A at 9-10, 32).

[4] The decision was made to suspend Crouch because she admitted to using vulgarity in the exchange with Blanks. (Dkt. No. 19, Ex. C at 73, 160). However, when Landers instructed Crouch to report to HR to discuss the decision, Crouch responded to Landers by using vulgarity and this triggered the decision to discharge her as well. (*Id.* at 157, 160).

[5] In her EEOC Complaint, Blanks stated that she attempted to submit her letter of resignation on April 14, 2011, but she was advised by the Director of Human Resources that the decision to terminate her had been made and effective as of Friday, April 8, 2011. (Dkt. No. 21, Attach. No. 1, ¶¶55-60).

[6] Blanks submitted a charge to the Equal Employment Opportunity Commission ("EEOC"). (Dkt. No. 21, Attach. No. 1).

retaliated and discriminated against her based on her race and national origin in violation of Title VII, 42 U.S.C. §2000e. (Dkt. No. 1). Upon the completion of discovery, Brazosport filed this Motion for Summary Judgment which is ripe for adjudication.

## II. STANDARD OF REVIEW

The Court analyzes the Defendant's Motion for Summary Judgment under the well-established summary judgment standard. Fed. R. Civ. P. 56(c); *see generally*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

Blanks brings claims against Defendant Brazosport for employment discrimination. She alleges that based on her race and national origin Brazosport discriminated against her and retaliated against her in violation of Title VII of the Civil Rights Act of 1964.[7] Brazosport moves for summary judgment on all Blanks' claims.

### A. Title VII Claims

#### 1. Applicable Law

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2. A plaintiff may prove employment discrimination through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Direct evidence is evidence that, if believed,

---

[7] Notably, while alleging discrimination based on national origin, Blanks has since clarified that she does not have a separate claim for national origin. (Dkt. No. 19, Ex. A at 142-144).

5

proves intentional discrimination without inference or presumption. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). It "includes any statement or written document showing a discriminatory motive on its face." *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001). If the plaintiff provides direct evidence, then the burden shifts to the employer to prove that the same adverse action would have occurred regardless of discriminatory animus. *Laxton*, 333 F.3d at 578.

Absent direct evidence of intentional discrimination, a plaintiff's claims are governed by the burden shifting scheme established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-02 (1973). Under the *McDonnell Douglas* test, if a plaintiff establishes a prima facie case of discrimination, a presumption of discrimination arises and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* at 802; *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The defendant's burden is satisfied if it produces evidence, which "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Price*, 283 F.3d at 720 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original). "If the defendant articulates a reason that can support a finding that its actions were nondiscriminatory, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out." *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993)). "The plaintiff must then introduce sufficient evidence to create a genuine issue of material fact" that the defendant was motivated by discriminatory animus. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Plaintiff meets this burden by showing either (1) that defendant's articulated reason was pretextual (pretext alternative), or (2) that plaintiff's protected characteristic was a motivating

factor in the decision (mixed motives alternative). *Id.* If plaintiff meets this burden by demonstrating discriminatory animus, "it falls to the defendant to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus." *Id.* at 312-13.

In determining whether summary judgment is appropriate, courts are instructed to consider "the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 148-49 (2000). Personal belief or speculation, however, is insufficient to create a fact issue as to pretext. *McKey v. Oxidental Chemical Corp.*, 956 F.Supp. 1313, 1319 (S.D.Tex. 1997).

In the present case, Blanks presents no direct evidence of discrimination based on her race. *Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (to serve as direct evidence of employer discriminatory intent, the decision(s) must be direct and unambiguous, allowing a jury to conclude without inference or presumption, that national origin was an impermissible factor in the decision(s)). Accordingly, Blanks' Title VII claims are governed by the burden shifting scheme established in *McDonnell Douglas*.

### 2. Discrimination Claims

Title VII makes it unlawful for an employer to engage in an adverse employment action based on an employee's national origin. *See* 42 U.S.C. § 2000e-2(a). In order to establish a prima facie case employment discrimination based on race, a plaintiff must show: (1) she is a member of a protected group; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) after she was discharged, she was replaced with a similarly qualified member of the non-protected group *or* non-protected employees were given preferential treatment

under "nearly identical" circumstances. *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003); *Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *see also, Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005) (recognizing that the fourth prong may also be met if a plaintiff shows that he was "treated differently from others similarly situated").

In the present case, Blanks alleges that she was discriminated against based on her race in the following ways: (1) she felt demeaned during the investigation of the April 1, 2011, incident and investigators "painted [her] as . . . aggressive"; (2) a witness, Durham, described her as "threatening" in her investigation statement; and (3) Brazosport terminated her employment. The basis of Blanks' first two claims have no merit. In particular, regardless of her dissatisfaction, an investigation does not constitute actionable adverse employment action for purposes of Title VII. *See Cardenas-Garcia v. Tex. Tech. Univ.*, 118 Fed.Appx. 793, 794 (5th Cir. 2004) (recognizing that performance reviews and investigations do not qualify as ultimate employment action); *Dittmer v. Tex. S. Univ.*, No. 10-182, 2011 WL 2162222, at *11 (S.D.Tex. June 2, 2011) (Miller, J.) (recognizing that an investigation is not an ultimate employment action); *see also, Okoye*, 245 F.3d at 512-14 (a claim for discrimination does not result merely because the employer chooses to believe one employee's version of the events). Blanks' concession that no racial comments or slurs were communicated to her during the course of the investigation only bolsters this conclusion. (Dkt. No. 19, Ex. A at 125, 128). Nor are her feelings or beliefs that Brazosport discriminated against her in the course of the investigation sufficient to support this claim. *See Hervey v. Miss. Dept. of Educ.*, 404 Fed.Appx. 865, 870 (5th Cir. 2010) (subjective beliefs of discrimination are not sufficient to support a claim for relief). Additionally, Blanks

cannot base her claim of discrimination on a statement that a witness made during the investigation. *Cf. Narasirisinlapa v. SBC Commc'ns*, No. Civ. A. 3-05-CV-001M, 2006 WL 832509, at *3 (N.D.Tex. March 29, 2006) (Lynn, J.) (observing that fabricated reports do not constitute ultimate employment decisions).

Blanks' termination, of course, does constitute an adverse employment action. Nonetheless, her claim fails because cannot establish that she was replaced by someone outside her protected class (Dkt. No. 19, Ex. A at 141; Ex. B at 63), nor has she identified a similarly situated employee who received preferential treatment. *Player v. Kan. City S. Ry. Co.*, 496 Fed.Appx. 479. 481-82 (5th Cir. 2012). Blanks argues that Crouch was similarly situated and, being a Caucasian and not fired for her conduct, she was treated more favorably than her. Although Crouch may have engaged in inappropriate behavior, she is not a proper comparator to Blanks because her conduct was not nearly identical to Blanks' conduct. *Dodge v. Hertz Corp.*, 124 Fed.Appx. 242, 244-45 (5th Cir. 2005); *Trotter v. BPB Am., Inc.*, 106 Fed.Appx. 272, 276-77 (5th Cir. Aug. 4, 2004); *St. Romain v. Ft. Bend Cnty. Sheriff's Office*, No. H-09-2273, 2011 WL 306411, *3 (S.D. Tex. Jan. 27, 2011) (Atlas, J.). Moreover, the undisputed evidence in the record clearly reflects that Brazosport has terminated individuals of different races and/or genders who engaged in harassing and threatening behavior toward a co-worker, particularly when it culminates in physical contact. (Dkt. No. 19, Ex. C at 182-184; Ex. D at ¶3).

Even assuming Blanks could establish a *prima facie* case of discrimination based on her termination, Brazosport has articulated a legitimate reason for her discharge. Specifically, Brazosport's proffered reason for terminating her employment was that she engaged in harassing and threatening behavior toward a co-worker that culminated in Blanks physically touching the co-

worker and restricting her movement. This is a legitimate, nondiscriminatory reason for an adverse employment decision, like firing an employee. *See, Taylor v. Brackenridge Hosp.*, 349 Fed.Appx. 874, 877 (5th Cir. 2009) (verbal harassment by an employee constitutes a legitimate, non-discriminatory reason for the termination); *Jackson v. Blockbuster, Inc.*, No. 4:04-CV-119, 2010 WL 2268086, *6 (E.D. Tex. June 4, 2010) (Schell, J.) (an employer had a legitimate, non-discriminatory reason for terminating employee where he threatened another employee); *Mawle v. Tex. A&M Univ.*, CC-08-64, 2010 WL 1782214, *14 (S.D. Tex. April 20, 2010) (Head, J.) (threats against a co-worker constitute a legitimate, non-discriminatory reason for termination of employee).

Finally, setting aside her speculation and/or unsubstantiated assertions, Blanks has not shown that Brazosport's proffered reason was merely a pretext or that her race was a motivating factor behind its decision. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins Co.*, 530 F.3d 395, 399 (5th Cir. 2008); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000);[8] *see generally, Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (although plaintiffs are protected from employment decisions based on intentional discrimination, it does not protect them from unfair decisions). Accordingly, the Court concludes that Blank's race discrimination claim fails.

### 2. Retaliation Claim

Title VII of the Civil Rights Act of 1964 also forbids an employer from "discriminat[ing]

---

[8] Blanks admitted that she physically touched Crouch and the undisputed evidence also reflects that Blanks positioned herself to prevent Crouch from moving away from her. Blanks' subjective belief of a pretext – unsupported by any evidence save her conjecture or speculation – is insufficient to create a genuine issue of material as to this issue. *See generally, Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment).

against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). The Court applies the *McDonnell Douglas* burden shifting framework to Blanks' retaliation claim. *Fabela*, 329 F.3d at 415.

To establish a prima facie case of unlawful retaliation under Title VII, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)); *Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 198 (5th Cir. 2000). "Protected activity" is defined as opposition to any practice rendered unlawful by Title VII, including "making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a) (2001); *Evans v. City of Houston*, 246 F.3d 344, 352-53 (5th Cir. 2001); *see also, Long*, 88 F.3d at 304 (protected activities under Title VII require that an employee express opposition to activity that the employee reasonably believes is discriminatory). Moreover, to demonstrate causation, the employee "must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir.1999).

Blanks contends that she was subjected to retaliation in violation of Title VII based on the 2008 and 2010 complaints she made about Crouch's conduct.[9] She also contends that Crouch sought to retaliate against her – in effect, get even – during the investigation of the April 1, 2011 incident because Blanks reported Crouch in 2008 and 2010 for negative comments she made about

---

[9] *Supra* note 2.

hospital procedures and her dislike of a doctor. Blanks' allegations do not amount unlawful retaliation because neither the 2008 or the 2010 reports, which clearly did not involve discrimination - qualify as protected activity for purposes of Title VII. *See e.g., McGarry v. Univ. of Miss Med. Ctr.*, 355 Fed. Appx. 853, 858 (5th Cir. 2009) (reports of riding an IV pole down the hallway was not behavior protected by Title VII); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) (reports of a deteriorating relationship between co-workers did not give rise to protected activity); *Dortch v. Mem'l Hermann Healthcare Sys. - S.W.*, 525 F.Supp.2d 849, 865-67 (S.D. Tex. 2007) (Atlas, J.) (complaints of a co-worker cursing and violating company rules were not protected activity). Furthermore, there is simply no evidence that any decision-maker retaliated against her. *Cf. Carrasquillo v. Johans*, No. 05-1475, 2007 WL 782194, at *4 (E.D. LA. March 13, 2007) (Feldman, J.) (observing that individual complained about was neither the decision-maker or a supervisor and, thus, no causal link exists to connect the protected activity and the adverse employment action). Thus, even assuming Crouch sought to retaliate against Blanks, Brazosport is not liable for any such retaliatory actions. *See id.*

In her Response to Brazosport's Summary Judgment Motion (Dkt. No. 20), Blanks asserts a new basis for her retaliation claim against Brazosport – namely, that she was subjected to retaliation after she made a complaint on the global compliance hotline on Monday, April 11, 2011 at 9:08 p.m. (Dkt. No. 20 at 8). To the extent that the basis for this claim is properly before the Court, insofar as it was not alleged in the EEOC Charge or her Complaint,[10] her claim has no merit. The undisputed evidence in this case reflects that the alleged protected activity occurred

---

[10] *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

subsequent to the adverse employment action. (Dkt. No. 19, Ex. D at ¶¶6-7). *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Jones v. Houston Ind. Sch. Dist.*, Civ. Action No. H-08-4742, 2010 WL 2557780, at *4 (S.D. Tex. June 22, 2010) (Froeschner, J.). Nor has Blanks offered any evidence that but for her call on the hotline to a third-party on the night of April 11, 2011, she would not have been discharged which had previously occurred on April 8, 2011. (*Id.*).

## CONCLUSION

For all the foregoing reasons, this Court concludes that the Summary Judgment Motion filed by Defendant Brazosport (Dkt. No. 19) is **GRANTED** and that the Complaint filed by Plaintiff Angela Banks is **DISMISSED with prejudice**.

**DONE** at Galveston, Texas, this _23rd_ day of February, 2015.

_____
JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE